## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **LOROSA RICHARDSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIV-15-** 1193-R |
| | ) | |
| 1. **ADVANCEPIERRE FOODS, INC.,** | ) | |
| **f/k/a ADVANCE FOOD COMPANY,** | ) | |
| **INC.,** | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Lorosa Richardson, and for her Complaint in the above-entitled action, alleges and states as follows:

### PARTIES

1.      Plaintiff, Lorosa Richardson, is an adult female who resides in Garfield County, Oklahoma.

2.      Defendant is AdvancePierre Foods, Inc., f/k/a Advance Food Company, Inc., an entity doing business in Garfield County, Oklahoma.

### JURISDICTION AND VENUE

3.      This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on claims of: (a) violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 in the form of race discrimination; (b) violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA") in the form of

1

disability discrimination; (c) retaliation for use of leave under the Family Medical Leave Act ("FMLA"); (d) worker's compensation retaliation; and (e) *Burk* tort for termination in retaliation for testimony given in a hearing before the Oklahoma Employment Security Commission.

4.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5.     All of the actions complained of herein occurred in Garfield County, Oklahoma. Defendant is doing business in such county and may be served in said county. Garfield County is located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.     Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 16, 2015. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated August 17, 2015 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7.     Defendant operates a factory producing frozen meat products.

8.     Lorosa Richardson, who is Black, was hired as a Temperature Taker in or

around 2007.  In or around 2008, Richardson was promoted to Quality Technician.  In or around 2009, she was promoted to Oven Operator.  In or around 2013, she was promoted to Line Lead.

9.      During her employment, Richardson's job performance was at least satisfactory, if not excellent.

10.     In or around 2011, Richardson was diagnosed with colon cancer.  Richardson underwent surgery to remove such cancer on or about January 9, 2012.  Richardson applied for and was granted FMLA leave for surgery and her recovery period.  She returned to work in or around March 2012. For the following year, Richardson attended follow-up appointments every three (3) months.   Thereafter, Richardson attended follow-up appointments every six (6) months.  Richardson was not offered FMLA leave for this time.

11.     On or about March 18, 2014, Richardson's foot was injured when it became caught between 2 pallet jacks during her shift.  She immediately reported the incident and was referred to Sabrina (last name unknown), Defendant's on-site nurse. Defendant sent Richardson to a doctor who treated her injury and later released her to work.  In the following weeks, Richardson experienced severe pain in her foot.  Richardson repeatedly reported her continued pain to Sabrina, but was given only over-the-counter medication to treat her injury.

12.     Due to her continued foot pain, Richardson retained an attorney and filed a worker's compensation claim in or around mid-August 2014.

13.     In or around Summer 2014, Richardson attended a follow-up appointment with

her oncologist for her colon cancer.  Richardson submitted a doctor's note for such appointment to Hughes and/or Blanchard, but was not offered FMLA leave for this time.

14.     In or around early September 2014, Richardson requested and was granted a two week FMLA leave for surgery on her foot.

15.     On or about September 15, 2014, Richardson had foot surgery to correct the on-the-job injury she suffered in March 2014.  Due to the lack of medical care, Richardson lost half of her big toe.  Richardson was off work for recovery for approximately two (2) weeks.  Thereafter, Richardson was placed on light duty, as she was released to seated work only and could not drive.

16.     In or around mid-October 2014, Richardson testified under oath pursuant to subpoena during an Oklahoma Employment Security Commission hearing regarding a terminated employee of Defendant.  The employee was terminated for alleged sexual harassment.

17.     Within days after her testimony, Richardson was told by Production Supervisor Shade Hughes (who is White) that she was being demoted from her Line Lead position. Hughes stated the reason was that Richardson was not setting a good example as a leader because she had not worked on September 13, 2014, a day that Defendant asked volunteers to work on a Saturday.  However, Richardson told Hughes on September 12, 2014 that she could not volunteer for work on the 13th because she was having surgery on September 15, 2014.  And, the 13th was a volunteer work day, thus, Richardson was not required to work.

18.     Hughes further stated that Richardson had not been adhering to her schedule when she returned to work on light duty.  However, Defendant previously approved a modified schedule for Richardson because she could not drive and was riding with another employee.  Regardless, Richardson was demoted from her lead position.

19.     On or about November 6, 2014, Richardson was released to return to work on the line for eight (8) hours a day.

20.     On or about December 1, 2014, Richardson was informed of her termination by Hughes and Human Resources Director Bob Blanchard.  The alleged reason for her termination was that Richardson had created a hostile work environment for another employee.

21.     At the time of termination, Defendant was aware that Richardson requested December 2, 2014 off to attend a follow-up appointment with her oncologist.

22.     The proffered reason for Richardson's termination was false.  Specifically, while in the break room, Richardson was asked by a co-worker whether she had watched news coverage of the grand jury verdict issued in the highly publicized Ferguson, MO officer-related shooting case.  Richardson shared her opinions with the co-worker, including but not limited to stating that she did not believe the young Black male would have been shot by the White police officer if the young man were White.  Allegedly, her co-worker complained about Richardson's comments.

23.     Richardson was not asked for her side of the story related to her comments on

the Ferguson, MO shooting until after the decision to terminate her employment had been made.

24.     During the termination meeting, Blanchard referenced the fact that Richardson had previously been written up for missing work.  However, Richardson had not been presented with any written discipline during her employment.  And, any absences she had were due to the medical treatment she received for her on-the-job injury and her medical restrictions during her light duty assignment.  Richardson had provided doctor's notes for her medical restrictions and medical time off.

25.     Such reasons were merely pretext for unlawful discrimination and retaliation.

26.     In response to Richardson's claim for unemployment benefits, Defendant presented four write-ups allegedly issued to Richardson before her termination.  None are signed by Richardson, and while they contain a "Date of Violation" ("DOV"), the documents do not indicate the date they were allegedly written or presented.  And, the DOV dates are in close temporal proximity to Richardson's protected activities.

27.     For instance, the first write-up has a DOV of August 29, 2014, just days after Richardson contacted an attorney to file a worker's compensation claim.

28.     The second write-up has a DOV of September 13, 2014, within two (2) weeks of Richardson's request for medical leave for foot surgery scheduled on or about September 15, 2014.  This write-up purports to demote Richardson from her Line Lead position for this reason, although Richardson was not informed of her demotion until mid-October 2014,

6

shortly after she testified in another employee's unemployment hearing.

29.     The third write-up with a DOV of October 24, 2014, states that Richardson was late twelve (12) times without notification to her supervisor.  However, this was the period of time Richardson was being driven to work by another employee due to her medical restrictions - which was approved by Defendant.

30.     The fourth write-up with a DOV of November 24, 2014, alleged that Richardson missed two (2) mandatory work weekends without notifying Defendant.  However, Richardson was not released to work for those weekends and informed Defendant of the same.

31.     None of the aforementioned documents were presented to Richardson before her termination.  And, prior to filing her worker's compensation claim and taking time off due to such injury, Richardson had not been written up.

32.     Following her surgery on or about September 15, 2014, Richardson developed arthritis in her injured foot.  Due to her medical conditions, including but not limited to her foot injury with related arthritis, and colon cancer, Richardson is a qualified individual with a disability within the meaning of the ADA and ADAAA, in that she was disabled, has a record of disability, and/or was perceived as disabled. Further, her disabilities substantially limit and/or limited her in one or more of her major life activities, including but not limited to walking, standing, sleeping, and using the bathroom. Her disabilities impact one or more of her internal bodily processes, including but not limited to muscoloskeletal and digestive

function. However, at all times relevant hereto, she was able to perform the essential functions of her job with or without reasonable accommodations.

33.    Upon information and belief, Richardson has been replaced by a significantly younger White female.

34.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - ADA AND ADAAA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

35.    The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

36.    More specifically, Plaintiff was a qualified individual with a disability in that she suffers from physical impairments (i.e., arthritis, cancer) which substantially limits her ability to perform one or more major life activities as set forth above.  Further, Plaintiff's disability impacts one or more of her internal bodily processes as shown herein.

37.    Despite said impairments, Plaintiff could perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

38.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

39.    Because the actions of Defendant were willful, wanton or, at the least, in

reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II - FMLA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

40.     The matters alleged above constitute retaliation for Plaintiff's use of medical leave in violation of the Family Medical Leave Act.

41.     Plaintiff was entitled to medical leave because she required time off to care for herself due to a serious health condition (as set forth above) and worked for Defendant (i.e., an entity with more than 50 employees within a 75 mile radius of Plaintiff's worksite), for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

42.     Defendant retaliated against Plaintiff for her use of time off in removing her job responsibilities, demoting Plaintiff and terminating Plaintiff.

43.     Defendant further interfered with Plaintiff's FMLA when Plaintiff was required to attend follow-up appointments with her oncologist following surgery to remove colon cancer.  In fact, Defendant terminated Plaintiff one day before she was to attend a follow-up appointment, which Defendant was aware of at the time of Plaintiff's termination.

44.     As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

45.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost wages (past and future), liquidated damages (based on the willfulness of Defendant's violation of the FMLA), attorney fees and costs.

## COUNT III - Title VII Race Violations

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

46.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of race discrimination.

47.     Plaintiff is entitled to relief under Title VII because she is Black, was qualified for her job, was disciplined and terminated, and her position was not eliminated after her termination.

48.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

49.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## COUNT IV - 42 U.S.C. § 1981 Violations

For her fourth cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows:

50.     The matters alleged above constitute violations of 42 U.S.C. § 1981 in the nature of race discrimination.

51.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and non-pecuniary losses.

52.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT V -  WORKERS' COMPENSATION RETALIATION

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

53.     Defendant's actions, as described above, constitute retaliation in violation of the Oklahoma Workers' Compensation Act.

54.     Plaintiff sustained a job-related injury before February 1, 2014 for which she could assert a claim for benefits under the Oklahoma Workers' Compensation Act.

55.     Defendant had knowledge of Plaintiff's work-related injury.  Thereafter, Defendant terminated Plaintiff's employment.

56.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

57.     Defendant's actions were willful, wanton and/or conducted in a reckless

disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

## COUNT VI -*Burk* Tort

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

58.     The acts above-described also constitute a *Burk* tort, i.e., a violation of Oklahoma's public policy which prohibits wrongful termination against a person for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

59.     Here, Plaintiff, who was an at-will employee of Defendant, was wrongfully discharged in significant part for a reason that violates an important Oklahoma public policy goal, articulated in 21 O.S. §491 and 40 O.S. §4-507, for which no adequate statutory remedy exists.  And, she was fired for exercising a legal right or interest and/or performing an act that public policy protects and/or would encourage.

60.     As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages including punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff

and against the Defendant and assess actual, compensatory, punitive damages, together with

pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may

deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 22nd DAY OF OCTOBER, 2015.**

s/Jana B. Leonard
JANA B. LEONARD, OBA #17844
LAUREN W. JOHNSTON, OBA #22341
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800        (telephone)
(405) 239-3801        (facsimile)
leonardjb@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED